WILLIAM J. ROSE, JR., APPELLEE, V. CHICAGO & NORTH-WESTERN RAILWAY COMPANY, APPELLANT.

FILED MARCH 22, 1924.    No. 22737.

**Appeal:** CONFLICT OF EVIDENCE. In an action between a shipper and a carrier for negligent delay in the shipment of live stock, the published schedules required by law are the best evidence of the time in which the live stock was to be transported under the bill of lading. But, where such schedules are not introduced in evidence by the carrier, and where there is a conflict of evidence as to the schedule time, the question is one of fact for the jury, and a verdict based upon such evidence will not be set aside unless it is manifestly wrong.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. *Affirmed*.

*Wymer Dressler, Robert D. Neely, Paul S. Topping* and *Hall, Williams & Cline*, for appellant.

*Jacob Fawcett, F. V. Robinson* and *Ernest F. Armstrong,*
*contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DAY and
GOOD, JJ., REDICK, District Judge.

LETTON, J.

Plaintiff recovered a judgment for damages by reason
of the negligent failure of defendant to transport certain of
his live stock to market in reasonable time, whereby an
undue shrinkage and loss of market occurred. In sub-
stance, the facts as stated by the witnesses for plaintiff are
as follows:

On the afternoon of March 19, 1920, plaintiff shipped,
under a written contract, 51 head of cattle from Howe,
Nebraska, to Chicago, over the line of the Missouri Pacific
Railway Company. They were to be transported over the
line of the Chicago & Northwestern Railway Company,
defendant, from Omaha. Plaintiff had inquired of the
agent there how long it would take to move the cattle on
defendant's line of road from Omaha to Chicago, and had
been told less than 36 hours. The cattle arrived in Omaha
at 11:30 a. m. March 20, where they were unloaded. He
had a conversation in Omaha with the agent of the defend-
ant, the Chicago & Northwestern Railway Company, as
to the time the shipment would arrive in Chicago, desiring
to make the Monday morning market. The agent told him
that the cattle would go through in 36 hours. In order
that this should be done he then signed what is known as
a 36-hour release, which is an agreement upon the part of
the shipper that the cattle may remain in the cars 36 hours
without unloading. The cattle were loaded in three cars
at Omaha at 8:30 p. m. Plaintiff accompanied the ship-
ment. They arrived at Clinton, Iowa, at 10 p. m. the next
day. At Clinton he was told that he would have to unload
the stock because there was not time to get into Chicago
within the 36 hours required by the federal statute. Some
cars of stock upon the same train were taken on to Chi-
cago at once. The cattle had been in the cars for 25½

Rose v. Chicago & N. W. R. Co.

hours when they arrived at Clinton. The cattle arrived in Chicago at 2 a. m. on March 23, and were sold on the Chicago market that forenoon. The market for such cattle on March 22 was $14.74 per cwt. and on March 23, $14.15. The cattle were not in good condition when they arrived in Chicago, and if they had arrived the day before they would have sold at an increased price of from 25 to 50 cents per cwt. There was testimony that the usual time for the shipping of live stock over the defendant line from Omaha to Chicago was from 28 to 36 hours when the stock was not unloaded, and that during March, 1920, it was not customary to unload stock between Omaha and Chicago. There was testimony that from 40 to 50 pounds a head would be a reasonable shrinkage if the cattle had been shipped straight through, and that from 70 to 80 pounds was the estimated shrinkage under the circumstances of the case.

For the defense there was an explicit denial of any promise by the agent at Howe, or by an agent of defendant, to any one that the cattle should be delivered in Chicago within 36 hours, and denial of the authority of any one to vary the printed and published schedule. The general superintendent of the railroad testified that he supervised the making of train schedules and was familiar with them during the year 1920; that according to the schedule it would be necessary to unload and feed these cattle at Clinton, Iowa, in compliance with the federal statute, and that the first train out from South Omaha, which is train No. 254, on which the cattle were shipped, would furnish the fastest time possible in conformity with good railroad practice. The several conductors of the train testified that though traffic was heavy the train made the run in the usual time. From Omaha to Clinton, a distance of about 420 miles, the entire time consumed was 25½ hours; and from Clinton to Fortieth street, Chicago, a distance of 130 miles, the time occupied was 8 hours and 5 minutes.

Defendant assigns as error the refusal of the court to direct a verdict in its favor, asserting that the evidence is

insufficient to support a liability, and because the alleged agreement to transport the cattle to Chicago within 36 hours, if in fact made, was an unlawful discrimination as against other shippers, and was void. Whether the agreement to transport the cattle to Chicago within 36 hours was an illegal discrimination depends upon what were the actual published traffic rates and schedules for the transportation. We have no fault to find with the contention of the defendant in this regard if the schedules had been shown to be in excess of 36 hours, nor with the other propositions of law presented by it to the effect that the schedule time of a stock train is presumed to be reasonable; that a carrier is liable only for negligent delay; that to agree with a particular shipper to expedite a shipment at regular rates when no rates have been published for such expedited service is unlawful discrimination; that a bill of lading issued by the initial carrier binds all participating carriers and protects all; and that liability for damage to interstate shipments depends upon the law as construed by the federal courts.

The trouble with the defense in this case is that the published time-tables and schedules were not produced by defendant, and that there is a conflict in the evidence with regard to the schedule time for the transportation of cattle from Omaha to Chicago at that time. Three witnesses, whose business was closely connected with such shipments, testified that they were familiar with the time for such transportation, and that it was within 36 hours. The superintendent of the defendant railroad testifies that he supervised the making of train schedules and was familiar with them during the year 1920, and that according to the schedule it would be necessary to unload and feed these cattle at Clinton in compliance with the federal statute. If, as several witnesses testify, the usual and customary time for the transportation of such cattle over defendant's line at the time they were shipped was from 28 to 36 hours, the jury were entitled to presume, in the absence of the published schedules, that these trains were run upon

schedule time.  An issue of fact was thus raised between their testimony and that of the general superintendent, which the jury were entitled to determine from the testimony adduced.  The best evidence not being before the jury, they had a right to consider that which had been admitted, and to determine the question as a question of fact. The jury probably took note of the fact that defendant, though having the schedules in its possession, did not offer them in evidence.  Another relevant fact in this connection is that, if the schedule provided for a greater time than 36 hours for shipment from Omaha to Chicago, there would have been little use in having plaintiff sign the 36-hour release, since feeding became obligatory at the expiration of 28 hours unless a release was signed by the shipper, and stopping at Clinton would have been compulsory.

The court gave the substance of nearly all of the instructions requested by the defendant, but left the question as to the negligent delay to the jury.

We find no error in the judgment, and it is

.AFFIRMED.